The next case for argument is Jia v. Garland. That would be me again, Your Honor. It looks like we have you for a matinee double feature today. I'm sorry. I lost audio. I lost audio. I can't hear. We may be transitioning to – I think your opposing counsel will also be via video, so we'll just wait a minute or two to make sure all the counsel are present. Mr. Tirico, can you hear me? There we go. I can hear you now. Judge, could you speak, please? Yes. We also want to make sure the lawyer for the government is present as well. We can't see that on the screen. Okay. Great. All right. Mr. Tirico, you can start whenever you're ready. Yes, Your Honors. May it please the Court, Thomas John Tirico for Ms. Chi. In the IG's decision, the petitioners were unable to meet their burden to prove that Ms. Chi really did suffer a forced abortion and the related punishment as a result of her opposition to the one-child policy. Under Statute Review Holder 590, Fed 3rd, 1034 at 1041 and 1042, an adverse credibility determination on a silent claim under the REAL ID Act must be based on the totality of the circumstances. The immigration judge should consider and address as necessary, otherwise appropriate, relevant evidence that tends to contravene a given fact that undermines credibility, citing Section 101A3 of the INA. Additionally, in evaluating inconsistencies, the relevant circumstances that an IJ should consider include petitioner's explanation for a perceived inconsistency, citing SOTO, 553, Fed 3rd, 1091, and any other evidence that sheds light on whether there is, in fact, an inconsistency. To ignore any petitioner's explanation for perceived inconsistency and relevant record evidence would be to make a credibility determination on less than the totality of the circumstances and in contravention of the REAL ID Act. Well, the first issue, petitioner testifies she did not meet the snakehead. Here, the petitioner testified that on cross, that on page 116, lines 21 through 25, and page 117, lines 14 to 20, she found a snakehead through her husband's friend named Zhengxing Zhao. And on page 119, lines 12 through 14, did you ever meet the snakehead? Petitioner replies no. Then her husband, on page 60, lines 7 through 19, and also on page 161, lines 1 through 9, he found the snakehead through a friend named Zhengxing Zhao, a friend. The name of the snakehead is Quan Lu. Additionally, Mr. Wang testified on page 161, 19 through 25, that the first snakehead he met was with us for a while, him and his wife. And then on page 162, lines 3 through 10, that Mr. Zheng met the snakehead three times, the first time by himself, both me and my wife, and I met with the snakehead. In this case, Ms. Zheng was never given an opportunity to explain why she did not meet with the snakeheads. Thus, she was never recalled on redirect. There was never a redirect of the petitioner, Ms. Qi. So petitioners explained, you know, she had to address this inconsistency. She was never given this opportunity. And then to use the husband's testimony alone to say, why do you think your wife testified this way? How could he explain why she testified? That would be, you know, she needs to explain her own inconsistencies and wasn't given that opportunity under the Real ID Act or under SESTRA. So that's one compelling factor that should be remanded back down. She should have that opportunity and be recalled to explain it. Why? Because he said the first snakehead he met. And so there was three meetings, and the first time he didn't meet, she didn't meet with the snakehead, he did. And it was never established in the record that they met Mr. Lu or she met Mr. Lu, who was the snakehead. So there's a lot of conjecture and speculation whether or not he actually met Mr. Lu. That's another reasoning. So it was never established that he on direct met Mr. Lu, who was a snakehead. He knows the name, but it never was established in the record that he met it as well. So to use this as an inconsistency would be, you know, and not giving her the opportunity would deny her the ability to explain away under the Real ID Act and under SESTRA and contravenes the Act, the Real ID Act. The second issue, that she returned home from the abortion around 1030 a.m. and that she called her husband, who came approximately an hour later. Can you address the fact that there was inconsistent testimony on the date of the forcible abortion? I mean, that seems like a pretty important event. And to get offered two contradictory dates seems to weigh in favor of the IJ's finding of adverse credibility. Right, and that's where you have to look at under SESTRA, under the Real ID Act, and under SESTRA quoting Lin V. Mukasey, 521 Fed 3rd, 2228 First Circuit, 2008, as well as the House Committee notes of 2005, H.R. Rep. No. 109-72 at 167. Under the Real ID Act, the rule of reason analysis must take into account the totality of the circumstances and should recognize that a normal limits of a human understanding and memory may make some inconsistencies or lack of recall in any witness's case. So here, throughout the whole testimony... But this isn't a trivial fact. I mean, this goes to the heart of the claim. When the forcible abortion occurred, I mean, you think... And it wasn't just the 15th versus the 16th, one day off. I mean, they were off by several months. Right, so on his initial direct, the actual husband testifies, there's four times my wife was harmed by the actual Chinese government for the one-child policy rule. The first in 1999, October, where she had a forced IUD when she requested to have a second child because their first child had some health issues or mental issues. The second time is when she found out or discovered in December of 2008, she kind of is trying to recall, and then she corrects herself almost in the same breath, no, no, no, it's not February of 2008. It was December of 2008. He then testifies and says, it was February of 2009. And then she kind of like says, calm down. And then he tells the actual date is December of 2008. So at that point, he said he found out about it on December, on the same day as her actual physical check with the family planning. However, if you look at his testimony, he says, I remember it, it was a Friday. It was a Friday. Now, if you look at the Friday that she had the new of the pregnancy, it wasn't December of 2018, a Friday of that was December of 2019. So really it was that when did he find out? And because that was the major inconsistency. She said she told him the day after she had the physical. And she learned from her actual work unit on December 19th, she was pregnant. But then he says and says adamantly, I knew it was on the day of the actual physical that she had, which was a Friday. But actually the physical, if you look at the calendar, which was December 18th was a Thursday. So actually he was mistaken, but he gives the right, he gives a day that recalls his recollection, which is actually the day after, which is December 19th of 2008. So now the abortion, when the actual abortion took place, it was never established in the record that, you know, when he went to the, when he actually, he knew of the date. He just said when he found out, which was, he says four o'clock in the afternoon, she called me and then I came home. And then he was asked on cross, well, you know, how do you know that? Why did your wife testify that it was in the morning she got home and called you and you came home an hour after that? Well, he testifies. Then he's asked, was she home at that time? And he says no. So how could he possibly know when she actually got home? If he's saying that he got home later, it was never established in the record that he was there the whole time or, or he came right afterwards. So I believe as again, under that rule, the rule of reason, their recollection of when timing of the time, four o'clock versus 1130, uh, should not affect the actual harm that was suffered. And then if you go to page Mr. Turiga, you've, uh, you have about 50 seconds left. So if you want to stay with that for a bottle, support the claim that she was harmed. If you look at it on page three 63 of the record, it does support that. She, it says diagnosis infection after abortion, vaginal massive bleeding and long, long time, which obviously corroborates that she had an abortion. And then also why didn't the judge consider under the country condition reports under page tool, uh, tool one that there are 13 million women a year are having forced abortions. That was never considered in the record and was submitted as documents. So that's where I would say there is compelling enough actual, uh, evidence here to show warrant a remand. Thank you, Mr. Evans. May it please the court. I'm Manny Evans representing the attorney general. Substantial evidence supports the agency's adverse credibility determination in Garland against Ming Dai. The Supreme court recently said that under the substantial evidence standard, quote, the only question for judges reviewing the BIA is factual determination is whether any reasonable adjudicator could have found as the agency did. The present case easily meets this test. Both the immigration judge and the board correctly invoked the totality standard for assessing credibility in upholding the guy. Jay's decision. The board referred to three categories of evidence. First, Ms. G is confused. Testimony. Second, Mr. Wang's discrepant testimony. And third, the couple's inconsistent testimony about meeting the snake head regarding the first two categories. Petitioner's brief sets out at pages 16 to 17, the following inconsistencies. First, those regarding when Ms. Gia learned of her pregnancy. Second inconsistencies about when both Ms. Gia and Mr. Wang returned home the day of the alleged abortion and related communications between the couple. Third differences regarding which hospital Ms. Gia treated Ms. Gia for two weeks following the alleged abortion. Petitioners do not dispute the existence of these contradictions. Instead, they raise merely that they raise meritless challenges to using them as support for the adverse credibility determination. But the heart of the claim rule to which petitioners refer has long been aggregated. This court cannot re-weigh evidence under the substantial evidence standard, and repeated significant inconsistencies will displace concerns about an inconsistency that does not enhance a claim. Repeated significant inconsistencies are what we have here. The agency properly relied on them. Can you, counsel, if I may interrupt, can you address your opposing counsel's point about the snake head testimony? He says the wife wasn't given an opportunity to explain the inconsistency about, you know, whether she met the snake head or not. Sure, Your Honor. Just turning to that point, this is a further inconsistency that the board and the IJ relied upon, and the petitioners don't dispute the existence or significance of that statement. The court notes they contend only that Ms. Gia was not given an opportunity to explain why her husband had contradicted her. Petitioners were never denied an opportunity to recall Ms. Gia as a witness, and that suffices to dispose of their opportunity to explain argument. As we set out in our recent 28J letter, there was no obligation here to provide Ms. Gia any greater opportunity to explain, because the inconsistency was obvious. And that's apparent from petitioners' own counsel actually seeking an explanation from Mr. Wang about Ms. Gia's testifying that he had not met the snake head. And I refer the court to pages 165 to 167 of the administrative record. Petitioners clearly knew of the inconsistent testimony, and yet they chose, apparently, not to recall Ms. Gia to further explore this. Because they could have recalled her, but did not even try to, that is a sufficient opportunity to explain, and the court should recognize that. Because there was a sufficient opportunity to explain, this is a further inconsistency on which the agency could reasonably rely in support of its adverse credibility determination. We note as well that the court has previously referred to this obvious inconsistency. Mr. Evans, before you move on, let me ask you a question about this opportunity to explain an issue. Your position, as you set forth in your letter, 28J letter, it wasn't necessary to give her an opportunity because it was obvious, right? Yes, Your Honor. But what you rely on is a BIA case. Now, is that new law with the BIA? There's no Ninth Circuit case on it, is there? That, you know, if the reviewing court deems the issue to be obvious, the Real ID Act's requirement of opportunity to explain doesn't apply, something like that. Isn't that the rule you're contending for? That's correct, Your Honor. Yes. And the 28J letter cites to matter of YIM, which I believe is a 2019 board decision. The reason that this court can rely on that decision now is that this is, it would be futile to remand to the agency to have them look at this further. And this court has recognized that futility is an exception to the Tenery Doctrine. I'd refer the court to, for example, matter of Singh against Barr, 935, Fed Third, 822. At the very last paragraph, the court is not going to engage in a ping pong match with the BIA on matters that are plain. And interestingly here, in relying on obviousness, the exception almost by itself shows why futility also applies. Because it's obvious, the opportunity to explain was adequately provided. There's no need to give the agency further opportunity to consider this inconsistency or the fact that the witness was not recalled. Judge Lee also pointed out the inconsistency, not specifically addressed, I believe, in Petitioner's opening brief regarding the date of the abortion. That appears at pages 150 and 151 of the administrative record. And interestingly, after the exchange where Ms. Gia apparently interjected during the incorrect testimony by Mr. Wang, Mr. Wang's first retrenchment after his wife's outburst was not to come up with another date. Instead, at page 150, he says, I don't quite remember. And then on the next page, he comes up with the next date, or with the date that corresponds with his wife's testimony. So we see a shifting here. Now, the IJ relied on this inconsistency in her decision, and that's at, I believe that's page 5 or page 6 of her decision. That's AR 5657. The board didn't refer to it specifically, but it did cite to the pages of the IJ's decision where the IJ relied on that. So that really does amount to a further reason why the agency's decision here to find the petitioner not credible is fully supported by substantial evidence. We'd ask that the court recognize that there is an obvious misexception to the opportunity to explain rule. But even if it doesn't, there's enough in this record to hold that the agency's, that the agency properly found that the petitioners failed to meet their burden of proof. And so for that reason, we'd ask the court to deny this petition if there are no further questions. Thank you. Mr. Terrio, we'll give you 30 seconds to respond. Yes, Your Honor. We petitioner feels that if she was given an opportunity to explain any inconsistency, she would be able to have that at least that have that opportunity whether and to do such would be under the Sestra, the totality of the circumstances, but it wasn't here. The judge did ask to have the actual husband called for direct and it would help her case. He said in and out and making her analysis in the same breath, the judge could have said, you know what I need to hear from her again because there are out and out inconsistencies. I want to make sure she, she's given the opportunity and that wasn't done here. Your Honor. And that's what's compelling. And that's why we're asking for a remit. Great. Thank you both for the helpful argument. The case has been submitted.
judges: TASHIMA, LEE, Cardone